**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Blair E. Reed (State Bar No. 316791)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
         jsmith@bursor.com
         breed@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: scott@bursor.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMONA PENIKILA on behalf of herself and all others similarly situated,<br><br>           Plaintiff,<br>      v.<br><br>PETIQ, LLC d/b/a SENTRY,<br><br>           Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Ramona Penikila ("Plaintiff"), individually and on behalf of other similarly situated individuals, allege the following Class Action Complaint against defendant PetIQ, LLC d/b/a Sentry ("Sentry" or "Defendant") for making, marketing, and distributing various brands of the Sentry Natural Defense, upon personal knowledge as to herself and her own acts and upon information and belief – based upon, *inter alia*, the investigation made by her attorneys – as to all other matters, as follows:

## INTRODUCTION

1. This is a class action on behalf of purchasers of the various brands of Sentry Natural Defense (the "Products") in the United States. The Products are sold as a flea and tick repellent that is "safe to use around children and pets." In fact, the essential oils that make up the Sentry Products are toxic if ingested or applied directly to the skin and can lead to serious complications.

2. Every Sentry Product represents that it is "safe to use around children and pets" and is "Veterinarian Tested."



3. Unfortunately for consumers and their pets, use of the Products exposes pets to the following concentrated essential oils that are present in every Sentry Product: peppermint oil,

cinnamon oil, lemongrass oil, clove oil, and thyme oil.[1]  These essential oils, despite being natural, can be toxic if absorbed through the skin or ingested by pets.  Symptoms of essential oil poisoning include: irritation to the skin, vomiting, muscles tremors, and other more serious complications that can lead to organ failure and death.  Despite these risks, consumers are directed to apply the Sentry Products directly to the skin of their pets:

**HOW TO APPLY**

**How to open:** Remove product tube from the package. Separate one tube from the others. Hold the tube with notched end pointing up and away from the face and body. Use scissors to cut off the narrow end at the notches along the line.
**How to apply:** Invert tube over dog and use open end to part dog's hair. Squeeze tube firmly to apply all of the solution to the dog's skin, as directed below.
**For Dogs Weighing Over 40 lbs:** Apply the entire tube (4.5 mL) as a continuous stripe on the dog's back starting between the shoulder blades and ending directly in front of the base of the tail.

4. Because of the risks associated with essential oil poisoning, veterinarians routinely warn consumers against using the essential oils contained in the Sentry Products and other similarly formulated products.

5. In an article posted on the Veterinary Centers of America website, Dr. Charlotte Flint warns consumers to "[n]ever apply a concentrated essential oil on your pet." [2]  This is because "only a couple of licks or a small amount on the skin could be harmful to a dog."

6. In an blog post answering the question "Are essential oils really dangerous to pets?," Dr. Marty Becker identified some of the "essential oils that are toxic to pets are cinnamon, citrus, lemon, pennyroyal, peppermint, pine, sweet birch, tea tree, thyme, wintergreen and ylang ylang."[3] Three of these identified essential oils are present in the Sentry Products (cinnamon, pepermint and thyme).  Contrary to the directions of the Sentry Products, Dr. Becker goes on to direct pet owners to "[n]ever apply any concentrated essential oil to a pet's skin."

---

[1] *Available a*t https://www.sentrypetcare.com/natural-flea-and-tick-protection-for-pets/.

[2] Dr. Charlotte Flint, *Essential Oil and Liquid Potpourri Poisoning in Dogs*, Veterinarian Centers of America.

[3] Dr. Marty Beck, *Are essential oils really dangerous to pets?* (January 23, 2018); *available at* https://www.drmartybecker.com/petconnection/essential-oils-really-dangerous-pets/.

CLASS ACTION COMPLAINT                                                                                          2

7. Defendant knows about this issue, as evidenced by its ambiguous representation that the Product was "Veterinarian Tested." But Defendant omits the fact that the Products cause essential oil poisoning and are not *recommended* by veterinarians.

8. Even worse, Defendant targets consumers who are particularly safety conscious with its representations that the Products are "natural," and "safe for use around pets and children." As the Pet Poison Helpline noted "[w]e have certainly seen an increase in essential oil toxicity in recent years due to the increase in pet owner's desire to treat more holistically or with natural remedies."[4]

9. While this damage may not be immediately noticeable, and does not manifest every time the Products are used, the Products nonetheless expose every pet on which they are used to a considerable risk of a serious adverse reaction. Simply put, the Products are not fit to be sold as a flea and tick medication and Defendant's representation that the Products are safe to use around pets and children is false and misleading.

10. This is a proposed class action brought by Plaintiff, on behalf of a class of similarly situated individuals, against Defendant for breach of implied warranty, unjust enrichment, fraud, and violations of California consumer protection laws.

## JURISDICTION AND VENUE

11. This Court has personal jurisdiction over Defendant. Defendant purposefully avails itself of the California consumer market and distributes the Products to at least hundreds of locations within this County and thousands of retail locations throughout California, where the Products are purchased by thousands of consumers every week.

12. This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum

---

[4] Jo Marshall CVT, NREMT, *Essential Oils and Dogs*, available at https://www.petpoisonhelpline.com/pet-safety-tips/essential-oils-dogs/.

of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

13. Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information and omissions regarding the Sentry Products, occurred within this District.

**PARTIES**

14. Plaintiff Ramona Penikila is an individual consumer who, at all times material hereto, was a citizen of California. Ms. Penikila purchased Sentry Natural Defense for her dog in or around August 2019 at Petco in San Francisco, California. In purchasing the Product, Ms. Penikila relied on Defendant's false, misleading, and deceptive marketing of the Products as a safe flea and tick medication. Had Defendant disclosed that the Products are not fit to be used as a flea and tick medication because they cause essential oil poisoning, Ms. Penikila would not have purchased the Product. Ms. Penikila read and followed the instructions of the Product when applying it to her dog. After application, Ms. Penikila's dog experienced serious hair loss and abnormal skin irritation and itching. After Ms. Penikila scrubbed the area where the Product was applied, her dog eventually returned to normal.

15. Defendant's misrepresentation that the Products are "safe for use around pets and children" and its failure to disclose that the Products cause essential oil poisoning were immediate causes of Plaintiff Penikila's decision to purchase one of the Products. In all reasonable probability, she would not have agreed to purchase one of the Products, or would have sought materially different terms, had she known that the truth. Defendant's misrepresentation and omission were substantial factors in, Plaintiff Penikila's decision to purchase the Sentry Product.

16. Plaintiff remains interested in purchasing a safe natural flea and tick repellant and would consider the Sentry Products in the future if Defendant provided a product that would not cause essential oil poisoning.

17. Defendant PetIQ, LLC d/b/a Sentry is incorporated in the State of Idaho with a

principal place of business in Eagle, Idaho.

18. Defendant manufactures, markets, and distributes the Products throughout California, and the United States.

## CLASS ALLEGATIONS

19. Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Products (the "Class"). Excluded from the Class are persons who made such purchases for purpose of resale.

20. Plaintiff also seeks to represent a Subclass of all Class Members who purchased the Products in California (the "California Subclass").

21. At this time, Plaintiff does not know the exact number of members of the Class and California Subclass; however, given the nature of the claims and the number of retail stores in the United States selling the Products, Plaintiff believes that Class and California Subclass members are so numerous that joinder of all members is impracticable.

22. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

    a. whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

    b. whether Defendant's conduct was unfair and/or deceptive;

    c. whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Class;

    d. whether Defendant breached implied warranties to Plaintiff and the Class;

    e. whether Defendant breached express warranties to Plaintiff and the Class

    f. whether Plaintiff and the Class have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

23. Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased, in a typical consumer setting, Defendant's product and Plaintiff sustained damages from Defendant's wrongful conduct.

24. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Class or the California Subclass.

25. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

26. The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class and the California Subclass, thereby making appropriate equitable relief with respect to the Class and the California Subclass as a whole.

27. The prosecution of separate actions by members of the Class and the California Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class and the California Subclass even where certain Class members are not parties to such actions.

## COUNT I
**Violation of the California's Consumers Legal Remedies Act**
**(Injunctive Relief Only)**

28. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

29. Plaintiff Penikila brings this cause of action on behalf of herself and members of the California Subclass.

30. This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

31. Ms. Penikila and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

32. Ms. Penikila, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

33. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

34. As alleged more fully above, Defendant has violated the CLRA by marketing the Sentry Products as a flea and tick medication but failing to inform consumers that it is not fit to be used as a flea and tick medication because it causes essential oil poisoning.

35. As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5) and (a)(7).

36. Plaintiff and the members of the California Subclass have suffered harm as a result of these violations of the CLRA because they have paid monies for Sentry Products that they otherwise would not have incurred or paid.

37. Plaintiff also seeks to enjoin the sale of the Sentry Products, or to require Defendant to disclose the risk of essential oil poisoning and to prohibit representation that the Products are "safe for use around pets and children."

38. On November 8, 2018, a CLRA demand letter was sent to Sergeant's Pet Care Products, Inc. ("Sergeant's") via certified mail that provided notice of Sergeant's violation of the CLRA and demanded that within thirty (30) days from that date, Sergeant's correct, repair, replace or other rectify the unlawful, unfair, false and/or deceptive practices complained of herein. The letter also stated that if Sergeant's refused to do so, a complaint seeking damages in accordance with the CLRA would be filed. Sergeant's failed to respond to the letter. Sergeant's has since been acquired by Defendant.

39. On August 28, 2019, prior to the filing of this Complaint, a second CLRA notice letter was sent to Defendant which complies in all respects with California Civil Code §1782(a). Plaintiff's counsel sent Defendant the letter via certified mail, return receipt requested, advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.

40. Wherefore, Plaintiff presently only seeks injunctive relief for violations of the CLRA.

## COUNT II
### Violation California's Unfair Competition Law

41. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

42. Plaintiff Penikila brings this cause of action on behalf of herself and members of the California Subclass.

43. By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the California Subclass, by engaging in unlawful, fraudulent, and unfair conduct.

44. Defendant has violated the UCL's proscription against engaging in *unlawful* conduct as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5) and (a)(7) as alleged above.

45. Defendant's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

46. As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers.

47. Defendant's acts and practices described above also violate the UCL's proscription against engaging in *unfair* conduct.

48. Ms. Penikila and the other California Subclass members suffered a substantial injury by virtue of buying the Sentry Products that they would not have purchased absent Defendant's

unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled product.

49. There is no benefit to consumers or competition from deceptively marketing and labeling the Sentry Products.

50. Plaintiff and the other California Subclass members had no way of reasonably knowing that the Sentry Products they purchased were not as marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

51. The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Ms. Penikila and the other members of the California Subclass.

52. Defendant's violations of the UCL continue to this day.

53. Pursuant to California Business and Professional Code § 17203, Plaintiff and the California Subclass seek an order of this Court that includes, but is not limited to, an order requiring Defendant to:

    (a)    provide restitution to Ms. Penikila and the other California Subclass members;

    (b)    disgorge all revenues obtained as a result of violations of the UCL; and

    (c)    pay Ms. Penikila and the California Subclass' attorney's fees and costs.

### COUNT III
**Fraud**

54. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

55. Plaintiff brings this claim individually and on behalf of the members of the Class and California Subclass against Defendant.

56. As discussed above, Defendant not only failed to disclose to class members that use of the Sentry Products could cause essential oil poisoning, but represented to Plaintiff and the Class that the Products were "safe for use around pets and children."

57. The false and misleading representations and omissions were made with knowledge of their falsehood.

58. The false and misleading representations and omissions were made by Defendant, upon which Plaintiff and members of the Class and California Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and Class members to purchase Sentry Products.

59. The fraudulent actions of defendant caused damage to Plaintiff and members of the Class, who are entitled to damages and other legal and equitable relief as a result.

## COUNT IV
### Unjust Enrichment

60. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

61. Plaintiff brings this claim individually and on behalf of members of the Class and California Subclass against Defendant.

62. Plaintiff and Class members conferred benefits on Defendant by purchasing the Sentry Products.

63. Defendant has knowledge of such benefits.

64. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of Sentry Products. Retention of those monies under these circumstances is unjust and inequitable because Defendant failed to disclose that the Sentry Products cause essential oil poisoning.

65. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

**COUNT V**
**Breach of the Implied Warranty of Merchantability**

66. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

67. Plaintiff brings this claim individually and on behalf of members of the Class and California Subclass against Defendant.

68. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that that the Sentry Products are merchantable as flea and tick medication.

69. Defendant breached the warranty implied in the contract for the sale of the Sentry Products because it could not "pass without objection in the trade under the contract description," the goods were not "of fair average quality within the description," the goods were not "adequately contained, packaged, and labeled as the agreement may require," and the goods did not "conform to the promise or affirmations of fact made on the container or label." *See* U.C.C. § 2-314(2) (listing requirements for merchantability). As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Defendant to be merchantable.

70. Plaintiff and Class members purchased the Sentry Products relying on Defendant's skill and judgment in properly packaging and labeling Sentry Products.

71. The products were not altered by Plaintiff or Class members.

72. The products were defective when they left the exclusive control of Defendant.

73. Defendant knew that the Sentry Products would be purchased and used without additional testing by Plaintiff and Class members.

74. The Sentry Products was defectively designed and unfit for their intended purpose and Plaintiff and Class members did not receive the goods as warranted.

75. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class members have been injured and harmed because they would not have purchased the Sentry Products if they knew the truth about the product and that the product they received was worth substantially less than the product they were promised and expected.

## COUNT VI
## Breach of Express Warranty

76. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

77. Plaintiff brings this claim individually and on behalf of the members of the Class and California Subclass against Defendant.

78. Defendant, as the designer, manufacturer, marketer, distributor, or seller expressly warranted that the Products were fit for their intended purpose in that they would function properly as flea and tick medication, and that the Products were "safe for use around pets and children."

79. In fact, the Products do not function properly as flea and tick medication and are not safe for use around pets and children because the Products cause essential oil poisoning.

80. Plaintiff and the Class members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased the Products on the same terms if the truth concerning Defendant's Products had been known; (b) they paid a price premium due to Defendant's misrepresentations about the Products; and (c) the Products did not perform as promised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on behalf of herself and members of the Class and California Subclass as follows:

A. For an order certifying the Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and California Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and California Subclass members;

B. For an order declaring that Defendant's conduct violates the statutes referenced herein;

C. For an order finding in favor of Plaintiff, the Class, and the California Subclass on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For injunctive relief enjoining the illegal acts detailed herein;

F.      For prejudgment interest on all amounts awarded;

G.      For an order of restitution and all other forms of equitable monetary relief;

H.      For an order awarding Plaintiff and the Class and California Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: August 30, 2019      Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    /s/ L. Timothy Fisher
        L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Blair E. Reed (State Bar No. 316791)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
           jsmith@bursor.com
           breed@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: scott@bursor.com

*Counsel for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 30th day of August, 2019.

                                                 */s/ L. Timothy Fisher*
                                                       L. Timothy Fisher